IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ESTECH SYSTEMS, INC., <br><br> Plaintiff <br> v. <br><br> BBVA USA BANCSHARES, INC., AND <br> BBVA USA <br><br> Defendants. | CIVIL ACTION NO. 2:20-cv-00127 <br><br> FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT <br><br> **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Estech Systems, Inc. ("Estech" or "Plaintiff") files this first amended complaint against BBVA USA Bancshares Inc., and BBVA USA (together "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**PARTIES**

1. Estech Systems, Inc., is a Texas corporation, with its principal place of business at 3701 East Plano Parkway, Suite 100, Plano, Texas 75074.

2. Defendant BBVA USA Bancshares, Inc., is a private company incorporated in Texas with its headquarters at 2200 Post Oak Blvd., Houston, TX 77056. BBVA USA Bancshares, Inc.'s registered agent for service is C T Corporation System, at 1999 Bryan St., Ste. 900, Dallas, TX 75201.

3. Defendant BBVA USA, is a company organized under the laws of the State of Alabama and conducts business in this District. BBVA USA's registered agent for service is C T Corporation System, at 1999 Bryan St., Ste. 900, Dallas, TX 75201.

## JURISDICTION AND VENUE

4. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c).

6. Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to Defendants' presence and substantial business in this forum, including (i) at least a portion of the infringements alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

7. Specifically, Defendants intend to do and does business in Texas, directly or through intermediaries and offers its products and/or services to customers and potential customers located in Texas, including in this district.

8. Defendants maintains a regular and established place of business in this district, including at 2521 14th St, Plano, TX 75074.

## THE TECHNOLOGY

9. For more than 30 years, Estech has been a leading U.S.-based provider of end-to-end business phone solutions. Estech's Network Operations Center is located in Plano, Texas.

10. Since 1987, Estech has sold more than 400,000 solutions to its customers, working with more than 1500 certified partners nationwide. Its customers include small and large businesses across the country.

11. Recognizing that business doesn't get done without communication, Estech provides powerful products that that are easy and simple to use. Estech's products are engineered to make intelligent technology that is intuitive and user-friendly, empowers employee productivity, and fuels customer satisfaction.

12. Estech's technology is American-engineered. From its Texas headquarters, Estech provides a full solutions portfolio of modern business phone systems, including Cloud, Hybrid, Pure IP, and SIP dial tone products. Given Estech's end-to-end product offerings, Estech customers are empowered to choose the product features they need and want.

13. Estech's products include the most integrated cloud PBX in the market—the award-winning ESI Cloud PBX; Voice over IP (VoIP) products and systems; and on-premises products. A cloud-based PBX is a sophisticated telephone exchange system that uses a cloud infrastructure to provide communication services, such as telephony services.

14. Estech cloud-based products have handled billions of call minutes.

15. Estech also provides U.S.-based, best-in-class technical support for its customers.

16. The patents-in-suit, U.S. Patent Nos. 8,391,298 (the "'298 patent"), 7,068,684 (the "'684 patent"), and 7,123,699 (the "'699 patent") (collectively, the "Asserted Patents"), are generally directed to systems and methods for providing robust, feature-rich communications systems.

## COUNT I

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,391,298

17. Estech owns all substantial rights, interest, and title in and to the '298 patent, including the sole and exclusive right to prosecute this action and enforce the '298 patent against infringers, and to collect damages for all relevant times. The United States Patent and Trademark Office duly issued the '298 patent on March 5, 2013. A copy of the '298 patent is attached as Exhibit A.

18. The '298 patent describes information processing systems that store a list of phone numbers and provide those phone numbers to the user of a VoIP telephone. The user can use that list to dial the telephone number of another user associated with the system.

19. The claims of the '298 patent are not directed to an abstract idea. For example, claim 1 of the '298 patent recites a specific arrangement of devices and networking components. Together those devices and networking components enable a user of a first telecommunications device to observe a list of a plurality of telecommunications extensions. The list of extensions is stored in a server within a specific networking configuration, and the user can select to view a subset of the extensions. Taken as a whole, the claimed inventions of the '298 patent are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the functioning and operation of information processing systems.

20. The written description of the '298 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

21. Defendants made, had made, used, imported, provided, supplied, distributed, sold, or offered for sale products and/or systems, including VoIP telephone systems and networking equipment utilized by Defendants ("Accused Instrumentalities").

22. The Accused Instrumentalities include local area networks used in conjunction with VoIP devices, such as telephones, networking equipment, and servers that provide VoIP functionality.

23. By doing so, Defendants have directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '298 patent. Defendants' infringement in this regard is ongoing.

24. Defendants have infringed the '298 patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

25. Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

26. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '928 patent.

27. Defendants have also indirectly infringed the '298 patent by inducing others to directly infringe the '298 patent. Defendants have induced end-users, including Defendants'

personnel and contractors, to directly infringe (literally and/or under the doctrine of equivalents) the '298 patent by making and using the Accused Instrumentalities. Defendants took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '298 patent, including, for example, Claim 1 of the '298 patent. Such steps by Defendants included, among other things, advising or directing personnel, contractors or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; and/or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendants are performing these steps, which constitute induced infringement with the knowledge of the '298 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '298 patent. Defendants' inducement is ongoing.

28.     Defendants have also indirectly infringed by contributing to the infringement of the '298 patent. Defendants have contributed to the direct infringement of the '298 patent by its personnel, contractors, and suppliers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '298 patent, including, for example, Claim 1 of the '298 patent. The special features include, for example, the devices and networking components recited in Claim 1, including the interrelation between those devices and networking components, that allow the claimed server to provide a list of extensions and for the user to select to view a subset of the extensions. The special features constitute a material part of the invention of one or

more of the claims of the '298 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

29. Defendants have knowledge of the '298 patent at least as of the date when it was notified of the filing of this action.

30. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

31. Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

32. Defendants' direct and indirect infringement of the '298 patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

33. Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

34. Estech has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Estech has and will continue to suffer this harm by virtue of Defendants' infringement of the '298 patent.  Defendants' actions have interfered with and will interfere with Estech's ability to license technology.  The balance of hardships favors Estech's ability to commercialize its own ideas and technology.  The public interest in allowing Estech to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,068,684

35. Estech owns all substantial rights, interest, and title in and to the '684 patent, including the sole and exclusive right to prosecute this action and enforce the '684 patent against infringers, and to collect damages for all relevant times. The United States Patent and Trademark Office duly issued the '684 patent on June 27, 2006. A copy of the '684 patent is attached as Exhibit B.

36. The '684 patent describes information processing systems used to transmit voice using VoIP technology. A VoIP telephone is used to throttle the amount of data being transferred from a workstation connected to the VoIP telephone.

37. The claims of the '684 patent are not directed to an abstract idea. For example, claim 36 of the '684 patent recites specific steps performed by a specific arrangement of devices and networking components and operations performed by those components. Together, those devices and networking components provide quality of service to audio information by throttling the amount of data being transferred through a VoIP telephony device. Taken as a whole, the claimed inventions of the '684 patent are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of information processing systems.

38. The written description of the '684 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39. Defendants made, had made, used, imported, provided, supplied, distributed, sold, or offered for sale products and/or systems, including VoIP telephone systems and networking equipment utilized by Defendants ("Accused Instrumentalities").

40. The Accused Instrumentalities include local area networks used in conjunction with VoIP devices, such as telephones and network-connected devices connected to local area networks through the VoIP devices.

41. By doing so, Defendants have directly infringed (literally and/or under the doctrine of equivalents) at least Claim 36 of the '684 patent. Defendants' infringement in this regard is ongoing.

42. Defendants have infringed the '684 patent by making, having made using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

43. Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

44. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '684 Patent.

45. Defendants have also indirectly infringed the '684 patent by inducing others to directly infringe the '684 patent. Defendants have induced end-users, including Defendants' personnel and contractors, to directly infringe (literally and/or under the doctrine of equivalents) the '684 patent by making and using the Accused Instrumentalities. Defendants took active steps,

directly and/or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '684 patent, including, for example, Claim 36 of the '684 patent. Such steps by Defendants included, among other things, advising or directing personnel, contractors or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; and/or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendants are performing these steps, which constitute induced infringement with the knowledge of the '684 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '684 patent. Defendants' inducement is ongoing.

46. Defendants have also indirectly infringed by contributing to the infringement of the '684 patent. Defendants have contributed to the direct infringement of the '684 patent by its personnel, contractors, and suppliers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '684 patent, including, for example, Claim 36 of the '684 patent. The special features include, for example, the devices and networking components recited in Claim 36, including the interrelation between those devices and networking components, that throttle the amount of data being transferred through the telephone. The special features constitute a material part of the invention of one or more of the claims of the '684 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

47. Defendants have knowledge of the '684 patent at least as of the date when it was notified of the filing of this action.

48. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

49. Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

50. Defendants' direct and indirect infringement of the '684 patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

51. Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

52. Estech has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Estech has and will continue to suffer this harm by virtue of Defendants' infringement of the '684 patent. Defendants' actions have interfered with and will interfere with Estech's ability to license technology. The balance of hardships favors Estech's ability to commercialize its own ideas and technology. The public interest in allowing Estech to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,123,699

53. Estech owns all substantial rights, interest, and title in and to the '699 patent, including the sole and exclusive right to prosecute this action and enforce the '699 patent against infringers, and to collect damages for all relevant times. The United States Patent and Trademark Office duly issued the '699 patent on October 17, 2006. A copy of the '699 patent is attached as Exhibit C.

54. The '699 patent describes a telecommunications system for storing a voice mail message in a voice mail box in a voice mail system within a first local area network (LAN). A user can access and listen to the voice mail using a telecommunications within a second LAN by connecting to the first LAN via a wide-area network (WAN), such as the Internet.

55. The claims of the '699 patent are not directed to an abstract idea. For example, claim 1 of the '699 patent recites a specific arrangement of devices in a networking environment. Together those devices enable a user within a second LAN to access and listen to voice mail messages stored within a first LAN. Taken as a whole, the claimed inventions of the '699 patent are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the functioning and operation of information processing systems.

56. The written description of the '699 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57. Defendants made, had made, used, imported, provided, supplied, distributed, sold, or offered for sale products and/or systems, including VoIP telephone systems and networking equipment utilized by Defendants ("Accused Instrumentalities").

58. The Accused Instrumentalities include local area networks used in conjunction with VoIP devices, such as telephones, networking equipment, and servers that provide VoIP functionality.

59. By doing so, Defendants have directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '699 patent. Defendants' infringement in this regard is ongoing.

60. Defendants have infringed the '699 patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

61. Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

62. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '699 patent.

63. Defendants have also indirectly infringed the '699 patent by inducing others to directly infringe the '699 patent. Defendants have induced end-users, including Defendants' personnel and contractors, to directly infringe (literally and/or under the doctrine of equivalents) the '699 patent by making and using the Accused Instrumentalities. Defendants took active steps,

directly and/or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '699 patent, including, for example, Claim 1 of the '699 patent.  Such steps by Defendants included, among other things, advising or directing personnel, contractors or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; and/or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendants are performing these steps, which constitute induced infringement with the knowledge of the '699 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '699 patent.  Defendants' inducement is ongoing.

64.	Defendants have also indirectly infringed by contributing to the infringement of the '699 patent.  Defendants have contributed to the direct infringement of the '699 patent by its personnel, contractors, and suppliers.  The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '699 patent, including, for example, Claim 1 of the '699 patent.  The special features include, for example, the devices and networking components recited in Claim 1, including the interrelation between those devices and networking components, that allow a user to access and listen to the voice mail using a telecommunications within a second LAN by connecting to the first LAN via a wide-area network (WAN), such as the Internet.  The special features constitute a material part of the invention of one or more of the claims of the '699 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

65. Defendants have knowledge of the '699 patent at least as of the date when it was notified of the filing of this action.

66. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

67. Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

68. Defendants' direct and indirect infringement of the '699 patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

69. Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

70. Estech has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Estech has and will continue to suffer this harm by virtue of Defendants' infringement of the '699 patent. Defendants' actions have interfered with and will interfere with Estech's ability to license technology. The balance of hardships favors Estech's ability to commercialize its own ideas and technology. The public interest in allowing Estech to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

Estech Systems, Inc. requests that the Court find in its favor and against Defendants, and that the Court grant Estech the following relief:

a.  Judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or all others acting in concert therewith;

b.  A permanent injunction enjoining Defendants and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '298, '684, and '699 patents; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c.  Judgment that Defendants accounts for and pays to Estech all damages to and costs incurred by Estech because of Defendants' infringing activities and other conduct complained of herein;

d.  Judgment that Defendants' infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Estech its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: June 18, 2020                Respectfully submitted,


By: */s/ Fred I. Williams*
Fred I. Williams
Texas State Bar No. 00794855
Michael Simons
Texas State Bar No. 24008042
Jonathan L. Hardt
Texas State Bar No. 24039906
Chad Ennis
Texas State Bar No. 24045834
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com
jhardt@wsltrial.com
cennis@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 18, 2020, the undersigned caused a copy of the foregoing document to be served on all counsel of record, via electronic mail and the Court's CM/ECF system, pursuant to the Federal Rules of Civil Procedure.

*/s/ Fred I. Williams*
Fred I. Williams